UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESTATE OF ROBERT RENZEL, DECEASED, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LUPE VENTURA, et al.,<br><br>　　　　Defendants. | Case No.  5:15-cv-01648-RMW<br><br>**ORDER REGARDING MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

On October 16, 2015, plaintiffs Estate of Robert Renzel, Deceased; Susan Carter; Ann Renzel Sebastian; Robert E. Renzel Trust; and Bascom Avenue Development LLC ("plaintiffs") filed a First Amended Complaint against 28 defendants pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and related state law provisions. Dkt. No. 38 ("FAC"). Before the court is the motion to dismiss filed by defendants Hyang Bae Whang, Seon Guen Whang, and Kyu Chuk Whang, Dkt. No. 43. For the reasons set forth below, the court GRANTS-IN-PART and DENIES-IN-PART the motion to dismiss.

I.　BACKGROUND

This case arises out of alleged environmental contamination that occurred at a dry cleaning business known as Ritz Cleaners located at 520-526 S. Bascom Avenue (formerly known as 520-

526 San Jose-Los Gatos Road) in San Jose, California ("the property"). FAC ¶¶ 2, 6. Ritz Cleaners operated at the site starting in the 1940s. *Id.* ¶ 6.

According to the FAC, plaintiffs Robert Renzel, Susan Carter, Ann Renzel Sebastian, and the Robert E. Renzel Trust are prior owners of the property. *Id.* ¶¶ 3-6. Bascom Avenue Development LLC is the current owner of the property. *Id.* ¶ 7. The FAC does not describe how or when each plaintiff acquired or lost ownership of the property. The FAC names 28 defendants who allegedly operated Ritz Cleaners from 1947 to 2012. *Id.* ¶¶ 9-36. Defendants Hyang Bae Whang, Seon Guen Whang, and Kyu Chuk Whang, who bring the instant motion, allegedly operated Ritz Cleaners from approximately 1986 to 1988.[1] *Id.* ¶¶ 23-25.

The FAC alleges that the property has been impacted by the presence of tetrachloroethylene ("PCE") and "other solid and hazardous wastes." *Id.* ¶ 41. According to plaintiffs, PCE is a manmade, industrial solvent that has been used in significant quantities in the dry cleaning industry since the 1940s.[2] *Id.* ¶ 42-43. Plaintiffs describe PCE as a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen. *Id.* ¶ 46. Plaintiffs allege that PCE and many of its degradation products are closely regulated by the state of California and the federal government. *Id.* ¶ 46. The FAC explains that PCE degrades to TCE, which in turn degrades to DCE, which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine. *Id.* ¶ 45. Plaintiffs allege that PCE, TCE, DCE, and vinyl chloride constitute "hazardous substances" under federal and state law and constitute "hazardous waste and solid waste" under federal law. *Id.* ¶ 46. Plaintiffs generally allege that each defendant "caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of hazardous substances, hazardous waste, and/or solid waste in the environment in, at, and around" the property. *Id.* ¶ 48.

The FAC asserts the following claims against all defendants: (1) cost recovery under

---

[1] For brevity, unless otherwise specified, this order simply refers to the moving Whang defendants as "defendants."
[2] According to the FAC, "[c]ommon synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2- tetrachloroethylene, and tetrachloroethene." *Id.* ¶ 44.

2
5:15-cv-01648-RMW
ORDER REGARDING MOTION TO DISMISS
RS

CERCLA, 42 U.S.C. § 9607(a); (2) abatement of a public nuisance; (3) abatement of a private nuisance; (4) negligence; (5) continuing trespass; (6) breach of contract; (7) express indemnity; (8) equitable indemnity; (9) contribution; (10) waste; (11) ultrahazardous activity; (12) cost recovery under California's Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"); and (13) declaratory relief. Dkt. No. 38 at 1.

Plaintiffs filed this action on April 10, 2015 "in defense of claims against them" to "avoid or minimize their alleged liability associated with responding" to the environmental contamination described above. Dkt. No. 1 ¶ 1. The original complaint contained only a claim for cost recovery under CERCLA. Plaintiffs filed a First Amended Complaint on October 16, 2015, naming additional defendants and adding twelve additional causes of action. Dkt. No. 38. The moving defendants[3] filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 2, 2015. Dkt. No. 43. Plaintiffs filed an opposition on November 16, 2015, Dkt. No. 50, and defendants filed a reply on November 23, 2015, Dkt. No. 58.

## II.   ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[3] Other defendants filed answers, and others have not made an appearance in this case.

reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In ruling on a Rule 12(b)(6) motion, a court generally may not consider materials beyond the pleadings. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). An "exception to this general rule," however, is that "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Id.* (citation omitted).

### A.  Standing (All Claims)

Defendants argue that plaintiffs have failed to allege sufficient facts to show that they have standing. To establish standing under Article III of the Constitution, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Specifically, defendants note that the five named plaintiffs have failed to allege who owned the property in what year, whether they owned the property together at the same time or separately at different times, or how the conveyance(s) of the property were made. Dkt. No. 43-1 at 6. Without such information, defendants argue, plaintiffs have not shown which plaintiffs were allegedly injured or how defendants' actions in the late 1980s allegedly caused those injuries. Plaintiffs respond by noting that the FAC indicates that each defendant is alleged to have caused harm to the property and that each Renzel party is a current or prior owner of the property. Dkt. No. 50 at 4.

Plaintiffs' argument misses the mark. As defendants point out in reply, for example, the Whangs could not have caused any injury (or owed a duty of care) to a plaintiff that owned and sold the property *before* the Whangs operated a dry cleaning business on the property. Dkt. No. 58 at 2. Without alleging which plaintiffs owned the property, when they owned it, and which

4
5:15-cv-01648-RMW
ORDER REGARDING MOTION TO DISMISS
RS

plaintiffs entered into contracts with defendants, plaintiffs have failed to show that they have standing. Accordingly, the court dismisses plaintiffs' claims against the moving defendants in their entirety with leave to amend.

The court will now address defendants' other arguments for dismissing plaintiffs' claims so that plaintiffs can amend those claims, if appropriate, in their amended complaint.

### B.   Statute of Limitations (Claims 2-4, 6-7, 10)

Defendants assert that the following claims in the FAC are barred by the statute of limitations: Abatement of a Public Nuisance; Abatement of a Private Nuisance; Negligence; Breach of Contract; Express Indemnity; Waste; and Ultrahazardous Activity. Dkt. No. 43-1 at 1. According to defendants, inspection reports by the Santa Clara County Environmental Resources Agency Department of Environmental Health put plaintiffs on notice of PCE spills and the alleged contamination on March 27, 2006 and again on April 29, 2009.[4] Dkt. No. 43-1 at 3-4. According to defendants, the maximum statute of limitations period for the state law claims listed above is four years,[5] and thus, defendants argue, plaintiffs' complaint, filed in 2015, is untimely.

Plaintiffs' opposition brief does not dispute the substance of the reports. Rather, Plaintiffs respond by arguing that the inspection reports are not properly authenticated and not subject to judicial notice and that even if the court were to admit the reports, they mention only Ritz Cleaners personnel, not the names of the landlord-plaintiffs. *See* Dkt. No. 50 at 2-3. Plaintiffs also argue that every repetition of a continuing nuisance gives rise to successive actions for damages until the nuisance is abated. *Id.* at 3.

The court need not resolve these issues because plaintiffs overlook a more fundamental issue: the FAC alleges that the Whang defendants ceased operating Ritz Cleaners in 1988, FAC ¶¶ 23-25, decades before plaintiffs filed their complaint. Because the FAC does not specify particular instances in which each defendant allegedly caused the contamination, the only

---

[4] Defendants request that the court take judicial notice of these reports. Dkt. Nos. 43-2, 43-3. Defendants assert that plaintiffs served the reports on defendants prior to filing the FAC. Dkt. No. 43-1 at 3.
[5] *See* Dkt. No. 43 at 4-5 (citing Cal. Civ. Proc. Code §§ 337.2 (four year statute of limitations for contract claims); 338(b) (three year statute of limitations for property damage claims)).

5
5:15-cv-01648-RMW
ORDER REGARDING MOTION TO DISMISS
RS

plausible reading of the complaint is that the Whang defendants' tortious conduct or breach of contract, if any, occurred no later than 1988, starting the time for the statute of limitations. Moreover, even if releasing PCE may constitute a continuing nuisance—a point the court need not decide at this time—the FAC alleges that "[a]ctive use of PCE at the dry cleaning business was discontinued in 2009," FAC ¶ 58, which supports defendants' position that the statute of limitations began to run at that time.

If plaintiffs wish to argue that they did not discover defendants' violations until years later, thus tolling the statute of limitations,[6] plaintiffs "must specifically plead facts to show (1) the time and manner of discovery ***and*** (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (applying delayed discovery rule to products liability claim); *see also Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 902-03 (N.D. Cal. 2011) (dismissing contamination-related claims with leave to amend to allege facts that would toll statutes of limitations). Not only have plaintiffs failed to allege when they discovered the alleged contamination or why they were unable to discover such contamination earlier, as noted above, plaintiffs have not even alleged when they owned the subject property. Plaintiffs may have an explanation that would invoke the delayed discovery rule, but that explanation is not evident from the face of the FAC. Accordingly, the court grants the motion to dismiss Claims 2-4, 6-7, and 10 of the FAC against the moving defendants with leave to amend.

### C.     Timeframe for Release and Specification of Hazardous Substances Under CERCLA / HSAA (Claims 1 and 12)

Defendants assert that the FAC fails state a claim under CERCLA or the HSAA because it does not allege a general timeframe for when the alleged release of hazardous substances occurred or which specific hazardous substances were released. *See* Dkt. No. 43-1 at 6-8. To establish a prima facie case for recovery of response costs under 42 U.S.C. § 9607(a), a plaintiff must demonstrate:

---

[6] The delayed discovery rule may be invoked to toll the statute of limitations until "the plaintiff knows both the existence and cause of his injury." *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (quoting *United States v. Kubrick*, 444 U.S. 111, 113 (1979)).

> (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of persons subject to the liability provisions of [Section 9607(a).]

*City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002-03 (9th Cir. 2010). "A claim under the HSAA has the same elements as a claim under CERCLA." *Gregory Vill. Partners*, 805 F. Supp. 2d at 897.

As to the timeframe argument, defendants cite *Coppola v. Smith* for the proposition that "[a]t the pleading stage, a time frame need not be alleged with pinpoint precision, but a general time frame, to the best of [plaintiff]'s ability, should be included." *Coppola v. Smith*, 935 F. Supp. 2d 993, 1009 (E.D. Cal. 2013). The complaint at issue in *Coppola* did not allege any timeframe for release, so the court found the pleadings inadequate. *See id.*

Here, while it is true that the timeframe covered by the FAC spans nearly 70 years, plaintiffs point out that Paragraphs 23-25 of the FAC allege that the Whangs operated a dry cleaning business at the property from approximately 1986 to 1988. The FAC similarly alleges the general timeframe that the other named defendants operated a dry cleaning business on the property. *See* FAC ¶¶ 9-36. The court finds that these allegations, combined with the allegation that PCE, one of the hazardous substances at issue, is used in the dry cleaning industry,[7] provide adequate notice regarding when the alleged releases of hazardous substances occurred.

Defendants also complain that plaintiffs use the plural term hazardous "substances" in the sections of their complaint dedicated to CERCLA and the HSAA, but plaintiffs do not specify what hazardous substances, other than PCE, were released. Dkt. No. 43-1 at 7. Defendants rely heavily on *Coppola* in support of their argument. The *Coppola* court dismissed the plaintiff's complaint because it referred to PCE but alleged the release of other, unspecified, hazardous substances. 935 F. Supp. 2d at 1009. Plaintiffs here respond that the FAC refers not only to PCE

---

[7] *See* FAC ¶¶ 41-46.

7
5:15-cv-01648-RMW
ORDER REGARDING MOTION TO DISMISS
RS

but also to TCE, DCE, and vinyl chloride as hazardous substances. *See* FAC ¶¶ 43-46. Plaintiffs also note that another decision in this district denied a motion to dismiss on facts similar to those here. *See Tarob M & C Inv'rs, LLC v. Herbert*, No. 5:14-CV-04291-PSG, 2015 WL 5728426, at *3 (N.D. Cal. Sept. 30, 2015) (declining to follow *Coppola* where plaintiff alleged the release of PCE). Here, the court finds that plaintiffs have alleged sufficient facts regarding the release of a hazardous substance.

In sum, the court finds that plaintiffs' CERCLA and HSAA claims should not be dismissed for failure to plead a general timeframe for the release of a hazardous substance.

### D. Knowledge of Nuisance (Claims 2 and 3)

Defendants argue that plaintiffs' nuisance claims fail because the FAC does not allege defendants' knowledge of a nuisance or plaintiffs' lack of consent to the nuisance. Dkt. No. 43-1 at 8. The parties agree[8] that there are three possible theories of nuisance liability: (1) creating or assisting in the creation of the nuisance; (2) possessor liability for unreasonably failing to abate the nuisance (which requires, among other elements, a defendant's knowledge of the nuisance and the plaintiff's lack of consent); and (3) permitting a third party to create the nuisance. *See Coppola*, 935 F. Supp. 2d at 1018-19.

Defendants argue that plaintiffs here have asserted only the second nuisance theory, possessor liability, and not the first or third theories. Dkt. No. 58 at 3. Plaintiffs, however, contend that the defendants misconstrue their allegations and that plaintiffs have "clearly alleged that [defendants] created or assisted in creating the nuisance" under the first theory. Dkt. No. 50 at 7. Moreover, plaintiffs argue, defendants' motion does not challenge the first theory of nuisance liability. *Id.*

Despite the arguably unclear headings for plaintiffs' second and third claims ("Abatement of a [Public/Private] Nuisance"), the court agrees with plaintiffs that the FAC adequately alleges that defendants have created or assisted in the creation of a nuisance. *See, e.g.*, FAC ¶ 76 ("Defendants' acts and omissions in causing and contributing to releases of hazardous substances,

---

[8] *See* Dkt. No. 50 at 6; Dkt. No. 58 at 3.

1 hazardous wastes, and/or solid wastes in, at, and around the Site create a condition that is injurious
2 to health.") Accordingly, defendants' arguments about failure to plead knowledge or lack of
3 consent do not apply.

### E.     Elements of Public Nuisance (Claim 2)

Defendants next argue that plaintiffs' public nuisance claim fails because plaintiffs have not alleged that plaintiffs suffered injuries different in kind from the injuries suffered by the general public. Dkt. No. 43-1 at 9 (citing Cal. Civ. Code § 3493). Plaintiffs respond that it is reasonable to infer that the Renzel plaintiffs, as owners of the property, would suffer greater harm than the general public would suffer from contamination on plaintiffs' property. *See* Dkt. No. 50 at 8-9. Plaintiffs point to paragraph 62 of the FAC, which states that "[a]s a result of Defendants' releases of hazardous substances, hazardous waste, and/or solid waste at the Site, Plaintiffs have incurred and will continue to incur response costs in order to investigate and remediate the contamination." The court agrees that plaintiffs have adequately alleged that the harm plaintiffs have suffered from the alleged nuisance is greater than the harm suffered by the general public. *See Schaeffer v. Gregory Vill. Partners, L.P.*, No. 13-CV-04358-JST, 2015 WL 2267813, at *11-12 (N.D. Cal. May 14, 2015) (finding that plaintiffs had shown special injury to their property from plume of contamination that affected entire neighborhood).

### F.     Negligence (Claim 4)

Defendants argue that plaintiffs' negligence claim fails because plaintiffs have not alleged that the Whangs owed them a duty of care or that plaintiffs suffered anything more than economic loss. Dkt. No. 43-1 at 10 (citing *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318, (2006) ("[E]conomic loss alone, without physical injury, does not amount to the type of damage that will cause a negligence or strict liability cause of action to accrue.")).

Defendants' second argument is easily dispatched. Courts have held that "[t]he chemical contamination of a person's land is sufficient to show a physical injury to the land." *Coppola*, 935 F. Supp. 2d at 1015 (rejecting argument that plaintiff had alleged only economic injury). Here, plaintiffs have alleged that defendants caused contamination in the soil and the water table underneath the property. *See* FAC ¶¶ 95-96.

9
5:15-cv-01648-RMW
ORDER REGARDING MOTION TO DISMISS
RS

Defendants' argument that plaintiffs have inadequately alleged a duty of care, however, is well taken. As noted above, plaintiffs have failed to allege when they owned the property. Even if it is reasonable to infer that the Whang defendants owed a duty of care to their landlords at the time the Whang defendants operated Ritz Cleaners, plaintiffs have not alleged whether they owned the property during the time of the Whang defendants' operations. Plaintiffs' formulaic allegations that "defendants" had a duty of care, without specifying which defendants had the duty or to whom the duty was owed, *see* FAC ¶ 94, are insufficient.

Accordingly, defendants' motion to dismiss plaintiffs' negligence claim is GRANTED.

### G. Equitable Indemnity and Contribution (Claims 8 and 9)

Defendants argue that plaintiffs' claims for equitable indemnity and contribution are premature because the FAC does not allege that any judgment has yet been rendered against plaintiffs related to the alleged contamination at the property. Dkt. No. 43-1 at 11-12. "The cause of action for equitable indemnity accrues when the indemnitee suffers a loss through payment of an adverse judgment or settlement." *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010). "California law permits a concurrent tortfeasor to obtain equitable indemnity ***only*** from another concurrent tortfeasor." *Gen. Motors Corp. v. Doupnik*, 1 F.3d 862, 866 (9th Cir. 1993). Plaintiffs bring their equitable contribution claim under Cal. Civ. Code § 1432, which provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Defendants contend that because plaintiffs have not alleged that they are liable for any adverse judgment or settlement, there can be no indemnification or contribution.

Plaintiffs first respond by arguing that defendants' arguments should be stricken for failure to specifically indicate in defendants' notice of motion to dismiss, Dkt. No. 43, that defendants would be attacking claims 8 and 9 of the complaint. Dkt. No. 50 at 11-12. This argument is not persuasive because defendants' memorandum in support of its motion, Dkt. No. 43-1, was served concurrently with defendants' notice, and plaintiffs clearly had sufficient time to respond.

Addressing the substance of defendants' arguments, plaintiffs note that defendants Alfredo and Carmen Torres have filed counterclaims against plaintiffs alleging that the plaintiffs are joint

tortfeasors. Dkt. No. 50 at 12 (citing Dkt. No. 44 ¶¶ 51-55). Thus, plaintiffs argue, plaintiffs' claims are not premature. Aside from the counterclaims, plaintiffs argue, the FAC alleges that Renzel has incurred and will incur response costs for contamination cleanup. *Id.*; FAC ¶ 142. Plaintiffs cite *Sullins* as an example of a case in which the court denied summary judgment on a claim for equitable contribution even in the absence of an adverse judgment or settlement. *See* 729 F. Supp. 2d at 1139.

The *Sullins* court granted summary judgment for the defendant on a claim for contribution under Cal. Civ. Proc. Code § 875 because the plaintiff had not paid to discharge a judgment,[9] but the court denied summary judgement on a claim for equitable contribution under Cal. Civ. Code § 1432. 729 F. Supp. 2d at 1138-39. *Sullins* is distinguishable from the case at bar, however, because while there was no judgment against the plaintiffs in that case, there was a preexisting order by an administrative agency "addressed to both Plaintiffs and Defendant as parties who [were] jointly responsible for the remediation of the property" at issue. 729 F. Supp. 2d at 1139. The court found that the administrative "clean-up order constitute[d] the joint obligation required under § 1432." *Id.* At the hearing on this motion, plaintiffs' counsel represented that plaintiffs recently received a letter from county regulators that may support the existence of a joint cleanup obligation. Because the letter is not presently before the court, however, the court takes no position on whether the letter is analogous to the administrative cleanup order in *Sullins*. On the present record, there is no joint obligation shared by the Renzel plaintiffs and the Whang defendants.

Notably, the *Sullins* court also granted summary judgement for the defendant against a claim of equitable indemnity because there had not yet been an adverse judgment or settlement. *Id.* at 1139-40. Defendants' motion also cites *Team Enterprises v. Western Investment Real Estate Trust*, which granted judgment on the pleadings for a dry cleaning equipment manufacturer on an equitable indemnity claim because "[i]n the absence of predicate liability, the comparative equitable indemnity claim fails." *Team Enterprises, LLC v. W. Inv. Real Estate Trust*, 721 F. Supp.

---

[9] That section provides, in relevant part, that "[s]uch right of contribution may be enforced ***only after*** one tortfeasor has, by payment, ***discharged the joint judgment*** or has paid more than his pro rata share thereof." Cal. Civ. Proc. Code § 875(c) (emphasis added).

2d 898, 911 (E.D. Cal. 2010), *aff'd*, 446 F. App'x 23 (9th Cir. 2011). Plaintiffs' opposition brief does not attempt to distinguish *Team Enterprises*.

The court finds that because plaintiffs have not alleged the existence of a judgment, settlement, or other joint obligation between plaintiffs and defendants, the FAC fails to state a claim for equitable indemnity or contribution.

### H.    Ultrahazardous Activity (Claim 11)

Defendants contend that plaintiffs' ultrahazardous activity claim should be dismissed because courts have held as a matter of law that the use of PCE in dry cleaning is a widely accepted activity, the risks of which can be eliminated through the exercise of reasonable care. Dkt. No. 43-1 at 12. Plaintiffs respond by challenging defendants' factual assertions and by arguing that defendants inappropriately attempt to convert their motion into a motion for summary judgment without submitting any supporting evidence. Dkt. No. 50 at 13-14.

In support of their argument, defendants claim that three cases have disposed of strict liability claims involving PCE at the pleading stage. *See* Dkt. No. 43-1 at 12-13 (citing *In re Burbank Environmental Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998); *Schwartzman, Inc. v. General Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993); and *Greene v. Product Mfg. Corp.*, 842 F. Supp. 1321, 1326-27 (D. Kan. 1993)). Contrary to defendants' characterization, *Burbank* and *Greene* were decisions made on summary judgment, not at the pleading stage. Moreover, in *Schwartzman*, the court applied New Mexico law, not California law, and noted: "The New Mexico Supreme court has not determined whether the use, storage, or transportation of petroleum products, hazardous substances or hazardous wastes fall within the claim of common law strict liability." 848 F. Supp. at 945. These cases hardly support defendants' argument that courts commonly dispose of ultrahazardous activity claims involving PCE on motions to dismiss

Given the factual disputes in this case, the court finds that it would be inappropriate to dispose of plaintiffs' ultrahazardous claims without further factual development.

### I.    Declaratory Relief (Claim 13)

Finally, defendants contend that plaintiffs' claim for "a declaration that Defendants are liable to Plaintiffs for all responses [*sic*] costs incurred or to be incurred by Plaintiffs at the Site as

a result of releases of" hazardous materials, FAC ¶ 170, is not yet ripe. Dkt. No. 43-1 at 14. Defendants cite *City of Colton* for the proposition that no declaratory relief under CERCLA is available against potentially responsible parties until the moving party first establishes both "the expenditure of recoverable costs and that section 107 liability has been entered by a court as a matter of law." Dkt. No. 43-1 at 14 (citing *City of Colton*, 614 F.3d at 1008).

While it is true that in *City of Colton*, the Ninth Circuit ultimately affirmed summary judgment in favor of a defendant on a declaratory relief claim, the court explained that "so long as there has been a release of hazardous substances, and the plaintiff spends some money responding to it, a claim for declaratory relief is ripe for review." 614 F.3d at 1005. Here, plaintiffs have alleged that they "***have incurred*** and will continue to incur response costs." FAC ¶ 62 (emphasis added). Accordingly, the court declines to dismiss plaintiffs' declaratory relief claim on ripeness grounds.

## III.  ORDER

For the reasons set forth above, the Whang defendants' motion to dismiss the claims against them is GRANTED-IN-PART and DENIED-IN-PART as follows:

The motion to dismiss all claims for lack of standing is GRANTED.

Claims 2-4, 6-7, and 10 are DISMISSED for failure to plead facts that would toll the applicable statutes of limitations.

Claim 4 is DISMISSED for failure to adequately allege a duty of care.

Claims 8 and 9 are DISMISSED for failure to plead facts supporting an adverse judgment, settlement, or other joint obligation.

Defendants' motion to dismiss is DENIED in all other respects.

Plaintiffs shall file an amended complaint addressing the deficiencies above within 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated: December 11, 2015

*Ronald M. Whyte*
_____
Ronald M. Whyte
United States District Judge