UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT E. RENZEL TRUST, et al.,

Plaintiffs,

v.

ALFREDO TORRES, et al.,

Defendants.

Case No. 15-cv-01648-HSG

**ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANTS CARMEN AND
ALFREDO TORRES'S MOTION FOR
SUMMARY JUDGMENT OR
ALTERNATIVELY PARTIAL
SUMMARY JUDGMENT**

Re: Dkt. Nos. 174, 187

In their second amended complaint, Plaintiffs the Estate of Robert Renzel, by and through his successors in interest; Robert E. Renzel Trust, by and through its trustees; Susan Carter; Ann Renzel Sebastian; and Bascom Avenue Development LLC (collectively, "Renzel") assert thirteen causes of action against twenty-eight different owner-operators of Ritz Cleaners (collectively, "Defendants"). *See* Dkt. No. 67 ("SAC"). Ritz Cleaners is a dry cleaning business on property located at 520-526 S. Bascom Avenue (formerly known as 520-526 San Jose-Los Gatos Road), San Jose, California (the "Property"). *Id.* ¶ 2. Plaintiffs primarily seek cost recovery from Defendants under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607. Various cross claims and counterclaims have been asserted.

On September 14, 2017, the Court heard argument on Renzel's motion for partial summary judgment against Defendants Alfredo and Carmen Torres (collectively, "the Torres Defendants" or "Torres"). *See* Dkt. No. 174 ("Renzel Mot."). The motion is fully briefed. *See* Dkt. Nos. 179 ("Torres Opp."), 182 ("Renzel Reply"). Following oral argument, the Court took the motion under submission. On September 12, 2017, Torres also filed a motion for summary judgment. *See* Dkt. No. 187 ("Torres Mot."). That motion is now fully briefed. Dkt. Nos. 199 ("Renzel

Opp."), 210 ("Torres Reply").  The Court took the motion under submission on November 14, 2017.  *See* Dkt. No. 212.[1]  After carefully considering the parties' arguments, the Court **DENIES** the motions.

## I.    BACKGROUND

Some basic facts are not in dispute.  Renzel owns the Property.  SAC ¶¶ 3–7.  Renzel leased the Property to various dry cleaning owner-operators of Ritz Cleaners for seventy-one years, from at least 1941 to 2012.  *Id.*  ¶¶ 3–37.  The Torres Defendants operated Ritz Cleaners for approximately six years, from 1980 to 1986, under the terms of two different lease agreements, beginning respectively on October 1, 1980 and October 1, 1986.  *Id.* ¶¶ 22–23; Dkt. Nos. 175-1 ("the 1980 Lease"), 175-2 ("the 1986 Lease").  During this time, the Torres Defendants ran a dry cleaning machine about once per week.  *See* Dkt. No. 179-2, 53:1–10, 54:1–2, 123:25–124:1.  There was an initial period during which the dry cleaning machine was not working.  *See id.*

Plaintiffs were "first made aware" of evidence regarding the release of a hazardous substance, tetrachloroethylene ("PCE"), on the Property through an environmental investigation in 2012.  SAC ¶ 64; *see* Dkt. No. 175-9 ("Stone Decl."), Ex. I (providing an environmental site assessment stating that pollutants have reached groundwater in the Property's vicinity).  Plaintiffs allege that each Defendant, including the Torres Defendants, caused a release of PCE that spread and migrated from the Property, and that each Defendant failed to abate this contamination.  SAC ¶ 50.

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The Court views the inferences reasonably drawn from the materials in the record in the light most

---

[1] The Court finds that this matter is appropriate for disposition without oral argument.  *See* Civil L.R. 7-1.

favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III.  DISCUSSION

In moving for partial summary judgment, Plaintiffs seek a ruling on the issue of "Torres's

indemnity of and duty to defend Renzel under the terms of the Torres lease agreements."  Renzel

Mot. at 1.  In addition, Renzel requests "an order declaring that Torres must fulfill [their]

obligation to indemnify, defend, and hold harmless Renzel from the fees and costs associated with

the contamination, including environmental response costs, attorneys' fees, and loss of use of the

Property."  *Id.*  In opposition to Renzel's motion, the Torres Defendants highlight the lack of

factual evidence establishing: (1) that they caused or contributed to PCE contamination of the

Property; and (2) that other operators of Ritz Cleaners were equally, if not more, culpable for

contamination of the Property.  *See* Torres Opp. at 4–6.  Torres accordingly claims that summary

judgment is inappropriate and that they have no duty to indemnify Renzel.  *See id.* at 6, 19–20.

The Torres Defendants set forth substantively similar arguments in their motion for

summary judgment.  Specifically, Torres argues that all of Renzel's claims are dependent on the

same "unsupported allegation of a release caused by Torres."  Torres Mot. at 3.  In opposing

Torres's motion, Plaintiffs attach two expert declarations that they represent as creating triable

issues of fact as to whether Torres unlawfully caused or contributed to a release or threatened

release of PCE on the Property.  *See* Renzel Opp. at 7–10; Dkt. Nos. 204 ("Love Decl."), 205

("Sadler Decl.").  Plaintiffs do not dispute that liability for both their federal and state law claims

requires a showing that Torres contributed to or caused PCE contamination on the Property.  *See*

Torres Mot. at 3; Torres Reply at 1.  The Court therefore begins with Renzel's primary claim for

cost recovery under CERCLA, on which Torres moves for summary judgment.

**A.    Cost Recovery Under CERCLA**

To recover costs under CERCLA, Renzel must establish that:

> (1) the site on which the hazardous substances are contained is a facility under CERCLA's definition of that term; (2) a release or threatened release of any hazardous substance from the facility has occurred; (3) such release or threatened release has caused the plaintiff to incur response costs that were necessary and consistent with the national contingency plan, and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir. 1990)

(internal citations and quotations omitted).  The Ninth Circuit construes CERCLA "liberally" to

achieve the statute's "two primary purposes": first, "to provide the federal government with the means to effectively control the spread of hazardous materials from inactive and abandoned waste disposal site"; and second "to affix the ultimate cost of cleaning up these disposal sites to the parties responsible for the contamination." *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1340 (9th Cir. 1992) (citing *Anspec Co., Inc. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1247 (6th Cir.1991)). Here, the parties do not seriously dispute the first, third, or fourth above-stated elements required for cost recovery. *See 3550 Stevens Creek Assocs.*, 915 F.2d at 1358. Rather, the key question on summary judgment is whether there is sufficient evidence of a "release" or "threatened release" by Torres to create a genuine factual dispute for trial.

The evidence presented precludes summary judgment in either party's favor. Torres is correct that Renzel fails to offer direct evidence that Torres caused PCE contamination on the Property. *See* Torres Opp. at 19–20. Nonetheless, in opposing Torres's motion, Renzel presents circumstantial evidence that, when all inferences are taken in Plaintiffs' favor, suggests that Torres may have caused or threatened to cause PCE contamination on the Property between 1980 and 1986. For instance, Carmen Torres admitted in her deposition that she: (1) operated the dry cleaning machine approximately once a week, Dkt. No. 179-2 ("Torres Dep."), 53:1–10, 54:1–2, 123:25–124:1; (2) ordered PCE approximately ten times over six years, *id.* at 80:8–81:14; (3) learned how to operate the dry cleaning machine from the prior owner-operator, Celia Ventura, who also used and left behind PCE at the Property, *id.* at 91:18–92:1; and (4) did not place underneath the dry cleaning machine any kind of "catch pan" to avoid PCE spillage, *id.* at 180:4–16. Additional deposition testimony shows that Ms. Torres instructed the subsequent owner-operator of Ritz Cleaners, Seon Geun Whang, how to operate and clean out PCE from the dry cleaning machine (which was the same machine used by Torres). *See* Dkt. No. 200-2 ("Wang Dep.") at 27:20–29:6, 44:5–8, 46:2–9. Environmental investigations and site reports demonstrate that PCE was released and caused contamination while Ritz Cleaners was in operation. *See* Dkt Nos. 202, 200-1; Dkt. No. 187-1 ("Tropea Decl."), Ex. 12 (1998 official inspection by the County of Santa Clara observing improper storage/disposal of wastewater containing hazardous

substances), Ex. 13 (2006 official inspection by the County of Santa Clara noting "observed spillage from waste PERC [PCE] drums").

Other courts in this circuit have found summary judgment inappropriate in analogous circumstances. For instance, in *Lincoln Properties, Ltd. v. Higgins*, a California district court found a factual dispute sufficient to withstand summary judgment despite the absence of any "direct evidence that PCE (or any other contaminant) was released [by the defendant] from the wells 'into the environment.'" 823 F. Supp. 1528, 1538 (E.D. Cal. 1992). The court concluded that a triable factual dispute existed based partly on a "fair inference. . . that PCE is heavier than water" and expert testimony as to possibility of PCE migration. *See id.* at 1538–39 ("The trier of fact could infer from this evidence that there is a threat of PCE release from Wells 1 and 2 into Zone 'C.'"). So too in *Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*., 622 F. Supp. 2d 918, 927–928 (N.D. Cal. 2009). In that case, a court in this district found a material dispute of fact precluding summary judgment despite the absence of "direct evidence" that persons on the defendant's property used PCE. *See* 622 F. Supp. at 928. In reaching that holding, the court found sufficient "circumstantial evidence of PCE use on [the defendant's] property" consisting of (1) the plaintiff's "environmental studies," and (2) "the fact that a company once located on [the defendant's] property, Etch–Tek, was in a business that typically used PCE, although the owner of Etch–Tek testified that he never used PCE." *Id.*

Finally, in *Ed Niemi Oil Co. v. Exxon Mobil Corp.*, a district court again declined to award summary judgment based on a circumstantial showing strikingly similar to that in this case. *See* No. 3:11-CV-00214-MO, 2013 WL 957007, at *6 (D. Or. Mar. 11, 2013). The evidence in *Ed Niemi Oil Co.* included: (1) facts showing that hazardous material were "stored at, and dispensed from" the relevant property during the defendant's ownership; and (2) expert testimony as to "standard industry practices" at the time of the alleged release of petroleum products. *See id.* The district court concluded that there was a "genuine issue of material fact" as to the defendant's liability, noting that the plaintiff "need not prove either the occurrence of any particular release, or that [the defendant] caused it." *Id.* The court concluded that instead the plaintiff "must prove that a release occurred during [the defendant's] period of ownership that caused the incurrence of

6

remediation costs." *Id.*

As in these cases, the trier of fact could find Torres liable for a release or threatened release based in part on the above referenced testimony and site reports. In addition, Renzel offers expert declarations that further show the existence of disputed facts underlying Torres's alleged release or potential release. In considering "the long-term use of PCE at the site, the use of transfer dry-cleaning equipment at the site, and the location of PCE soil contamination with respect to the dry-cleaning machine at the site," Dr. Love, Plaintiffs' environmental forensics expert, opined that "PCE was released to the floor slab inside the Ritz Cleaners facility and the walkway outside the rear door of the facility." Love Decl. ¶ 29. Dr. Love then describes how PCE could migrate through the soil into the groundwater. *Id.* ¶ 30. Notwithstanding his opinion as to PCE spillage on the Property, Dr. Love states that "[a]pportioning contribution of PCE released for each of the owner/operator periods at this Site is not possible" due to the "lack of information that can be used to differentiate PCE releases over time." *Id.* ¶ 33. According to Dr. Love, the information available is "insufficient to inform a reliable estimate of discrete release timing during different owner/operator intervals based on calculating PCE transport rates," and any attempt to calculate the "timing of PCE release would have an unreliably high uncertainty." *See* Love Decl. ¶¶ 33–37. The inability to isolate relative PCE release times is, in part, a function of "accumulation of PCE releases from facility operations [over] time." *Id.* ¶ 37.

In addition to Dr. Love's statements, Mr. Sadler describes the typical operation of dry cleaning machines that use PCE as a solvent. *See* Sadler Decl. ¶¶ 12–13, 20. Based on his review of the evidence, experience in the dry cleaning industry, and familiarity with these machines, Mr. Sadler opines that the equipment used by Torres and Wang was a "first-generation transfer unit," which requires "[t]ransfer of wet PCE-laden garments." *Id.* ¶¶ 2, 12–13. This transfer can "at times lead to PCE dripping onto the floor due to the physical handling of those garments and transferring them between units." *Id.* In addition, Mr. Sadler describes how accidental leaks of PCE can occur from the delivery truck. *Id.* ¶ 22.

Torres objects to certain portions of both Dr. Love and Mr. Sadler's declarations as speculative and as lacking foundation under Federal Rule of Evidence ("Rule") 702(b). *See* Dkt.

United States District Court
Northern District of California

Nos. 210-1, 210-2. Rule 702(b) requires expert testimony to be "based on sufficient facts or data." To the extent that the Court relies on these declarations, it does so for Dr. Love's opinion as to the migration pattern of PCE, and Mr. Sadler's explanation of how dry cleaning machines typically function. That testimony is properly based on Dr. Love and Mr. Sadler's respective experience and their review of the evidence. *See* Fed. R. Evid. 702. Torres, notably, does not object to either expert's methodology as lacking in relevance or reliability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Cf. Walnut Creek Manor, LLC*, 622 F. Supp. 2d at 928 (declining to exclude expert testimony under *Daubert*, finding that "the fact that the groundwater has not been tested on [the plaintiff's] property does not mean that Schutze should not be heard to opine that the contamination travelled from WCM property via groundwater."). The Torres Defendants have also failed to set forth expert testimony to show that they are *not* liable for any release or threatened release of PCE on the Property. In view of Renzel's evidence and expert testimony, and taking all inferences in Plaintiffs' favor, the Court concludes that genuine factual disputes over Torres's potential release or threatened release preclude summary judgment.[2]

### B. Torres's Duty to Defend and Indemnify

Considering that a factual dispute precludes summary judgment as to Torres's liability for a release or threatened release, the Court finds that it would be similarly premature to decide the issues of Torres's duty to defend and indemnify Renzel. Though Plaintiffs at times assert in their motion that the issue of indemnity can and should be decided before liability, *see* Renzel Mot. at 9, they also claim that "Torres must indemnify Renzel for the reasonable costs of abating the contamination *to the extent Renzel is found liable*." *Id.* at 10 (emphasis added). Torres highlights that the issue of indemnity cannot be separated from the question of liability, *see* Torres Opp. at 17, also citing language from the 1980 and 1986 Lease. The Court agrees, considering especially

---

[2] Torres also objects to and moves to strike as irrelevant numerous exhibits to the Declaration of Kirk Tracy. *See* Dkt. Nos. 210-3, 200. Torres represents that many of the exhibits attached to Tracy's declaration are not referenced in Renzel's opposition to Torres's motion for summary judgment. The Court does not rely on any exhibits that are not referenced in Renzel's opposition, and therefore **DENIES AS MOOT** Torres's motion to strike.

that any one of the other twenty-six named Defendants could owe a comparable duty to defend and indemnify Renzel. *See* 1980 Lease at 4 ("[T]he Lessee will hold the Lessor harmless from all costs, charges and expenses, including court costs and counsel fees, *in respect to such injury or injuries, liabilities, claims and suits*, and also in respect to *all claims arising from* any omission or *act of negligence* of the Lessee or any of his agents, contractors or employees.") (emphasis added); 1986 Lease at 3 ("This lease is made upon the express condition that Lessee agrees to keep, save and hold Lessor free from all liability, penalties, losses, damages, costs, expenses, causes of action, claims and/or judgments arising by reason of any injury or damage to any person or persons. . . from any cause or causes whatsoever, including leakage. . . . Lessee hearby covenanting and agreeing to indemnify, protect and save Lessor harmless *from all liability, loss, costs and obligations on account of or arising out of any such injuries or losses however occurring*.") (emphasis added); SAC ¶ 119 ("Each lease with Defendants obligated Defendants to hold harmless and indemnify the respective landlord plaintiff for all liability, losses, damages, costs, expenses, causes of action, claims and/or judgments for injury or damage to any person or property, including the damage to the Property alleged herein."); *see also Ed Niemi Oil Co.*, 2013 WL 957007, at *9 ("[B]ecause I cannot conclude as a matter of law that Exxon Mobil is not liable for any of the remediation costs at the Bulk Plant, and because there are genuine issues of fact as to the allocation of liability, summary judgment is inappropriate.").

Furthermore, in opposition to Torres's motion, Renzel expressly acknowledges that "[a] dispute of material fact exists regarding Renzel's breach of contract claim," Renzel Opp. at 10; and "[a] dispute of material fact exists regarding Renzel's express indemnity claim," *id.* at 11. Renzel moves for partial summary judgment precisely on these issues: that is, Torres's contractual duty to defend and indemnify Renzel. Though Torres also moves for summary judgment on Renzel's equitable indemnity claim, Torres acknowledges in reference to its primary authorities that a "plaintiff's 'claim for equitable indemnification would necessarily hinge on the resolution of the CERCLA claim, because CERCLA provides the sole means of determining liability.'" Torres Mot. at 16–17 (quoting *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 711 (6th Cir. 2006)). Renzel agrees. *See* Renzel Opp. at 15–16. Given the apparent consensus between Renzel

1    and Torres that duty and indemnity issues are subject to material disputes of fact precluding

2    summary judgment, the Court concludes that deciding these issues would be inappropriate at this

3    stage.[3]

4        **C.    Renzel's Remaining Claims**

5        As discussed, there is no dispute that Renzel's state law claims are predicated on a release

6    or threatened release of PCE on the Property, or are otherwise derivative of their cost recovery

7    claim under CERCLA. *See* Torres Reply at 1, 3; Torres Mot. at 12–20. Considering that there is a

8    genuine factual dispute as to Torres's responsibility for these releases, summary judgment as to

9    these claims is unwarranted.

10       With regard to Renzel's strict liability claim, both parties assert that the Court can

11   determine as a matter of law whether use of PCE in the dry cleaning industry is an ultrahazardous

12   activity. But California courts have not decided that issue in a uniform manner (that is, whether an

13   activity can be broadly declared "'ultrahazardous as a matter of law'"). *See Venoco, Inc. v. Plains*

14   *Pipeline, L.P.*, No. 16-2988 PSG (JEMX), 2016 WL 10646303, at *10 (C.D. Cal. Sept. 26, 2016)

15   (collecting California cases, and concluding that the plaintiff's "economic harms are not the kind

16   of harm that would make transporting oil ultrahazardous"); *Blue Water Boating Inc. v. Plains All*

17   *Am. Pipeline, L.P.*, No. CV163283PSGJEMX, 2017 WL 405425, at *4 (C.D. Cal. Jan. 26, 2017)

18   (rejecting that the court had to find, as a matter of law, that an activity was ultrahazardous,

19   deciding instead that the issue was "best resolved at summary judgment or a trial on the merits.").

20   In declining to find at the pleading stage that Defendants' use of PCE was ultrahazardous, the

21   Court earlier noted that "[g]iven the factual disputes in this case . . . it would be inappropriate to

22   dispose of plaintiffs' ultrahazardous claims without further factual development." *See Estate of*

23   *Renzel v. Ventura*, No. 5:15-CV-01648-RMW, 2015 WL 8527522, at *7 (N.D. Cal. Dec. 11,

24   _____

25   [3] Because the Court concludes that summary judgment would be inappropriate for these reasons, it
     does not need to decide the other issues presented by Torres in opposition to Renzel's motion.
26   Torres is incorrect, however, that the SAC does not include a claim for declaratory relief and/or a
     claim that Torres must "hold harmless and indemnify" Renzel. *See, e.g.*, SAC ¶¶ 119, 133–139,
27   176–181; *see also* Torres Opp. at 7–9. In this regard, both parties request judicial notice of
     documents, some of which are already in the record in this case. *See* Dkt. Nos. 180, 188, 206.
28   The Court does not rely on these documents, and therefore **DENIES AS MOOT** the parties'
     requests.

2015).[4]  This aligns with the holdings of other California federal district courts that have relied on factual findings to determine whether use of PCE is an ultrahazardous activity.  *See In re Burbank Envtl. Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998) ("After considering the six criteria for ultrahazardous activity, the Court concludes plaintiffs have not stated sufficient facts to establish the use of TCE, PCE and hexavalent chromium is an ultrahazardous activity.").  Because the parties continue to dispute facts regarding whether and how Torres handled PCE, thereby potentially rendering that activity ultrahazardous, the Court finds that further factual development is still required.  *See* Renzel Opp. at 17–19; Torres Reply at 9–10.  Summary judgment on Renzel's strict liability claim is thus denied.

## IV.    CONCLUSION

For these reasons, the Court **DENIES** Renzel's motion for partial summary judgment and **DENIES** Torres's motion for summary judgment.  The Court **SETS** a case management conference for Tuesday, September 11, 2018 at 2:00 p.m. to discuss the remainder of the case schedule.  The parties must submit a joint case management statement by Tuesday, September 4, 2018.

**IT IS SO ORDERED.**

Dated:  8/23/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

[4] At the time that this order was issued, this case was assigned to the Honorable Ronald M. Whyte.